# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ISABEL MORENO** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No. 12-419 (RMC)** |
| | ) | |
| **DISTRICT OF COLUMBIA** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff Isabel Moreno, acting on behalf of himself and his minor son David Moreno, sues the District of Columbia, the Metropolitan Police Department ("MPD"), and MPD officers Edward Stewart and Samuel Swarn under 42 U.S.C. § 1983, and the common law.  The complaint arises out of alleged physical and mental injuries the Morenos suffered during an incident that occurred at their home on March 10, 2009.  Mr. Moreno seeks compensatory and punitive damages.

The District of Columbia and MPD move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or for summary judgment pursuant to Rule 56 on the grounds, among others, that the complaint fails to state constitutional claims and that the Morenos failed to comply with the District's statutory notice requirements applicable to the common law claims. *See* Defs. District of Columbia and District of Columbia MPD's Mot. to  Dismiss, or, in the Alternative, Mot. for Summ. J. [Doc. # 6].  Upon consideration of the District and MPD's motion to dismiss and Mr. Moreno's opposition, Pl.'s Response to Defs. District of Columbia and

District of Columbia MPD's Mot. to Dismiss [Doc. # 9], the Court will grant the motion in part and deny it in part.

Defendants Swarn and Stewart have also moved to dismiss under Rule 12(b)(6) on the grounds that the complaint fails to state constitutional and common law claims against them and that Isabel Moreno's common law claims are time-barred.  Defs. Samuel Swarn and Edward Stewart's Mot. to Dismiss [Doc. # 14].  Mr. Moreno has not complied with the Order of December 10, 2012, to oppose Officers Swarn and Stewart's motion to dismiss by the latest deadline of February 11, 2013.  *See* Min. Order of Jan. 11, 2013 (granting Mr. Moreno's  motion for an enlargement of time).

In all fairness, the record does not support the granting of Officers Swarn and Stewart's unopposed motion to dismiss as conceded.  In seeking an enlargement of time to respond to the Officers' motion to dismiss, Mr. Moreno stated that he does not speak English and "all correspondence from the court has come to me in English.  My court appointed attorney withdrew from the case and I have been seeking other counsel."  Pl.'s Mot. for Extension of Time [Doc. 16].   Indeed, it is obvious from a comparison of Mr. Moreno's cryptic opposition to the District of Columbia's dispositive motion with the well-pled complaint that Mr. Moreno did not draft the complaint and was most likely assisted by an attorney – albeit not one "appointed" by this Court.  Mr. Moreno has not filed a motion for counsel in this case, and the Court has not yet issued an order appointing counsel.  Considering Mr. Moreno's admitted limitations, obvious confusion, and apparent inability to retain counsel, the Court, having considered the factors for appointing counsel under Local Civil Rule 83.11, will appoint counsel to represent Mr. Moreno in further proceedings.  Officers Swarn and Stewart's unopposed motion to dismiss will be held abeyance pending completion of the appointment process and further order of the Court.

## BACKGROUND

Mr. Moreno "was born in El Salvador and has little formal education and little or no understanding of English."  Compl. ¶ 8.  Mr. Moreno alleges that on March 10, 2009, "Officer Edward Stewart and others forced entry into [his] home . . .[,] struck him about the mouth[,]" detained him and his son David, and "fatally shot [his] dog, Sammy."  Compl. ¶¶ 1, 11.  Mr. Moreno alleges that the Defendants acted in such a manner even though he had "peacefully responded to the police requests when they entered into his home."  *Id*. ¶ 42.  As a result of the alleged encounter, Mr. Moreno alleges that he suffered damage to his face, jaw, and mouth "commensurate with blunt force trauma," and "an abscess in the roof of [his] mouth that has since been removed."  *Id*. ¶¶ 14-16.  Mr. Moreno states that his "jaw is still out of place and he suffers from a permanent condition which can only be resolved with further surgery and treatment."  *Id*. ¶ 17.  Mr. Moreno alleges further that his son David "has been traumatized . . . and is seeking treatment to deal with the stress caused by the unauthorized and excessive force used by the Defendants."  *Id*. ¶ 18.

According to the MPD "Incident-Based Event Report" prepared by Officer Swarn, Stewart and other police officers responded to "a report of a suspiscious [sic] Hispanic Male climbing through an upstairs window" at Mr. Moreno's residence.  District of Columbia Defs' Mem. of P. & A., Ex. B [Doc. # 6-1, ECF p. 7].  Stewart "was in the rear" of the residence when two men "exited its rear door . . . followed by a large German Shepherd Dog . . . ."  *Id*.  The dog ran toward Stewart "aggressively."  *Id*.  Stewart "discharged his service weapon twice at the dog, striking it at least one time and stopping it."  *Id*.  The two individuals who had exited the rear door were stopped, identified, and released.  *Id*.  In addition, the officers stopped Mr. Moreno "in the front of the location[,] . . . "handcuffed [him] pending the officer's investigation of the

suspiscious [sic] person report, [and] identified [him] as a resident of the home and released [him]." *Id.*, ECF pp. 9-10. According to the report, an officer of the D.C. Humane Society "took possession of the dog, which was conscious and breathing at the time." *Id.*, ECF p. 7.

In the complaint filed on March 19, 2012, Mr. Moreno sets forth the following causes of action: (1) Negligent Hiring/Training of a Police Officer; (2) Negligent Assault; (3) Intentional Infliction of Emotional Distress; (4) Negligent Infliction of Emotional Distress; (5) Destruction of Property; (6) Property Damage; (7) Conversion; (8) Violation of First Amendment Rights; (9) Violation of Fourth Amendment Rights. As to the District of Columbia, Mr. Moreno sets forth the following causes: (10) False Arrest (Respondeat Superior Liability of the District of Columbia); (11) First Amendment Rights; (12) Fourth Amendment Rights; (13) Eighth Amendment Rights. Compl. at 4-10.

## LEGAL STANDARDS

### A. Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and

matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks and citation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Id.* at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**B. Motions for Summary Judgment**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a).

The District has proffered evidence requiring summary judgment analysis only with regard to the common claims.  *See* generally Defs.' Statement of Material Facts as to Which There Are No Genuine Disputes.  Therefore, the motion with regard to the constitutional claims will be analyzed under the standard applicable to motions to dismiss.

**DISCUSSION**

**1.  The Claims Against MPD**

Defendants argue correctly that the complaint against MPD should be dismissed because MPD cannot be sued separately from the District of Columbia.  *See Heenan v. Leo*, 525 F. Supp. 2d 110, 112 (D.D.C. 2007) ("[I]t is well settled that the MPD is non sui juris and, therefore, cannot sue or be sued.") (citations omitted).  Hence, the complaint against MPD is dismissed.

**2.  The Common Law Claims**

The District argues that Mr. Moreno's common claims should be dismissed on the procedural grounds (1) that the Morenos failed to provide timely notice of their claims pursuant to D.C. Code § 12-309, and (2) that Isabel Moreno's claims are barred by the applicable statute of limitations.  Under D.C. Code § 12–309, "any person wishing to bring a personal injury action against the District of Columbia for unliquidated damages must, within six months of sustaining the injury, notify the Mayor in writing 'of the approximate time, place, cause, and circumstances of the injury or damage.  A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.' "  *Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 161 (D.D.C. 2007) (quoting statute).  D.C. Code § 12-309 "constitutes a departure from the common law concept of sovereign immunity," and hence "is to be strictly construed" against the claimaint.  *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C.

1981); *accord Brown v. District of Columbia*, 853 A.2d 733, 736 (D.C. 2004) ("[C]ompliance with [§ 12-309] is mandatory as a prerequisite for filing suit against the District.") (citations and internal quotation marks omitted, brackets in original).  Unlike the disability tolling provision in the District's statute of limitations, *see* D.C. Code § 12-302(a), the six-month notice requirement "[can] not be tolled during [a] plaintiff's minority." *Doe by Fein v. District of Columbia*, 697 A.2d 23, 29 (D.C. 1997); *see Doe by Fein v. District of Columbia*, 93 F.3d 861, 876 (D.C. Cir. 1996) (certifying question to the D.C. Court of Appeals).

  Mr. Moreno has not disputed the District's evidence establishing that the Office of Risk Management ("ORM") "received a letter, dated March 24, 2011, from Isabel Moreno [] related to the claims . . . that allegedly occurred on or about March 10, 2009," Decl. of Lana Craven [Doc. # 6-1] ¶ 4, and he has not proffered any contradicting evidence. *See* Order [Doc. # 7] (advising Mr. Moreno about his responsibility to support his opposition to the District's summary judgment with evidence).  Since the District received the claim notice well beyond the six-month notification period, the Court concludes that the District is entitled to judgment as a matter of law on the common claims.[1]

### 3.  The Constitutional Claims

  The District argues that Mr. Moreno has failed to plead sufficient facts to support a municipal liability claim under 42 U.S.C. § 1983.  By the terms of § 1983, a plaintiff must allege

---

[1]  Since both plaintiffs' common law claims are foreclosed by the statutory notice requirement, the Court will not address the District's equally plausible argument that most of Isabel Moreno's common law claims are barred by the District of Columbia's one-year statute of limitations applicable to claims of "assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment."  D.C. Code § 12-301(4); *see Rendall-Speranza v. Nassim*, 107 F.3d 913, 920 (D.C. Cir. 1997) ("a claim for emotional distress that is intertwined with any of the causes of action for which a period of limitation is specifically provided, including assault and battery, is subject to the limitation period for the intertwined claim.") (citation and internal quotation marks omitted).

that the defendant violated a right protected by the Constitution.  In order for the District to be held liable for the acts of a wrongdoer under its authority, a plaintiff must show that the District was the "moving force" behind the alleged constitutional deprivation, *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978), as evidenced by an official policy or "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, --- U.S. ---, 131 S.Ct. 1350, 1359 (2011); *see Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 37 (D.D.C. 2010) (discussing "several different ways" the municipality may be held liable).  A municipality cannot be held liable under a theory of respondeat superior, *Monell*, 436 U.S. at 691, and the mere exercise of discretion by an employee is insufficient to hold a jurisdiction liable.  *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997).  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.  [However,] [a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 131 S.Ct. at 1359.

Constitutional claims against municipalities require a two-step analysis.  *See Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).  "First, the court must determine whether the complaint states a claim for a predicate constitutional violation." *Id.* (citation omitted).  If so, the Court must then inquire "whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Id.* (citing *Collins*, 503 U.S. at 120; *Monell*, 436 U.S. at 694).

For the following reasons, the District argues correctly that the complaint fails to state predicate claims under the First, Fifth, and Eighth Amendments; the District argues incorrectly that the complaint fails to state a claim under the Fourth Amendment.

The First Amendment Claim

The First Amendment protects the freedom, among others, of speech, but not without limitation. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467-69 (2009). Mr. Moreno claims that "the Officers deprived Plaintiffs of their First Amendment right to freedom of speech." Compl. ¶ 48. He alleges that "[t]he officers heard his explanation but forcefully removed him from his home, detained him, injured him and destroyed his property, his dog by shooting it and it later dying." Compl. ¶ 47. By his own admission, Mr. Moreno's speech was not suppressed or chilled. *See Hall v. Lanier*, 766 F. Supp. 2d 48, 53 (D.D.C. 2011) (finding allegations of multiple incidents of MPD officers' "chilling" plaintiff's speech under threat of arrest sufficiently stated First Amendment free speech claim). Mr. Moreno has otherwise conflated his substantiated Fourth Amendment claim (discussed below) with his unsubstantiated First Amendment claim. Hence, the First Amendment claim will be dismissed.

The Fifth Amendment Claim

The Fifth Amendment protects against the deprivation of life, liberty, or property without due process of law. Mr. Moreno mentions this amendment in his "Introduction," Compl. at 2, but has stated no supporting facts. Hence, the Fifth Amendment claim will be dismissed as lacking a factual basis.

The Eighth Amendment Claim

The Eighth Amendment prohibits the government from inflicting "cruel and unusual punishment" on prison inmates. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Under well-

9

settled law, the Amendment's prohibition applies only to persons who are subject to "punishment" by the government, which the Supreme Court has defined to mean persons against whom the government "has secured a formal adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979) (internal quotation marks omitted). Since Mr. Moreno does not allege that he or his son has been adjudicated guilty of any crime, the Eighth Amendment is inapplicable. *See id*.; *accord Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d at 152-53. Hence, the Eighth Amendment claim will be dismissed.

<u>The Fourth Amendment Claim</u>

The Fourth Amendment prohibits unreasonable searches and seizures. Claims based on a police officer's use of "excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [one's] person" are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[,]" *id*. at 396, considering such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citations omitted). Excessive force may be found "if 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' is weightier than 'the countervailing governmental interests at stake.' " *Rudder v. Williams*, 666 F.3d 790, 795 (D.C. Cir. 2012) (quoting *Graham*, 490 U.S. at 396). The Fourth Amendment is not violated by "every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . .; still, a police officer must have some justification for the quantum of force he uses." *Id*. (citation and internal quotation marks omitted).

Accepting as true Isabel Moreno's allegations that police officers, without provocation, beat him so severely that he suffered permanent injury to his face, jaw, and mouth, the Court finds that Isabel Moreno has sufficiently stated a Fourth Amendment claim of excessive force. *See Rudder*, 666 F.3d at 795 ("Unlike, say, pushing an arrestee against a wall and pulling his arm behind his back, beating a suspect to the ground with a baton exceeds in violence anything 'we would expect in the course of a routine arrest[.]' ") (quoting *Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011)).  The remaining question is whether Mr. Moreno has sufficiently pleaded a custom or policy as the motivating factor behind the constitutional violation.  Mr. Moreno alleges that the District "had actual or constructive knowledge that police officers were abusing their arrest procedures and/or misusing force," particularly as to "those who do not speak English."  Compl. ¶¶ 59-60.  He also claims that the "lack of adequate training and supervision . . . leads [sic] police officers to improperly arrest and search individuals, without probable cause, and/or use [sic] of excessive force in violation of arrestee's Fourth Amendment rights," *id.*, ¶ 63, and that "[t]he Officers' search and subsequent injury caused to Plaintiff was a result of the District of Columba's policy, custom, or practice and the failure to adequately train and supervise its officers[,] [causing] plaintiffs to be deprived of their rights under the Fourth Amendment . . . ."  *Id.* ¶ 64.

The District of Columbia has not addressed those specific allegations, which the Court finds are sufficient to state a municipal liability claim.  *See Connick*, 131 S.Ct. at 1359-60 ("To satisfy [§ 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact . . . .  Only then can such a shortcoming be properly thought of as a city 'policy or

custom' that is actionable under § 1983.") (citations and internal quotation marks omitted) (brackets in original).  If, as the Court finds here, "a complaint alleging municipal liability under § 1983 may be read in a way that can support a claim for relief, thereby giving the defendant fair notice of the claim, that is sufficient" to survive a motion to dismiss.  *Baker*, 326 F.3d at 1307. Hence, the District of Columbia's motion to dismiss the Fourth Amendment claim will be denied.

## CONCLUSION

For the foregoing reasons, the Court will grant the District of Columbia's motion for summary judgment on the common law claims and the District's motion to dismiss the constitutional claims except Isabel Moreno's Fourth Amendment claim of excessive force, which survives.  In addition, the Court will hold Officers Swarn and Stewart's unopposed motion to dismiss in abeyance, and will appoint counsel to represent Isabel Moreno in further proceedings. A separate memorializing order accompanies this Memorandum Opinion.


_____/s/_____
ROSEMARY M. COLLYER
Date: February 28, 2013          United States District Judge